In the Matter of the Application of THE BOARD OF RAPID TRANSIT RAILROAD COMMISSIONERS OF THE CITY OF NEW YORK, for the Appointment of Three Commissioners to Determine whether a Rapid Transit Railway or Railways, for the Transportation of Persons and Property, as Determined by said Board, ought to be Constructed and Operated.

*Rapid Transit Act — right of the court to impose conditions upon confirming the report of its commissioners — conditions of the bond required.*

In view of the fact that the Appellate Division has an absolute right to refuse to confirm the report of the Supreme Court rapid transit commissioners of the city of New York, it has power to confirm such a report subject to certain conditions imposed by it as to the security to be required of the contractor for the protection of the city.

The former determination of the Appellate Division, that the contractor be required to give the city a bond for $15,000,000, it was considered should be reaffirmed as to the amount, but that $14,000,000 of the bond should be conditioned upon construction and equipment, and that $1,000,000 should be a continuing security applicable to construction, equipment, rents, maintenance and operation.

INGRAHAM, J., dissented.

APPLICATION upon the part of the Board of Rapid Transit Railroad Commissioners for reargument or modification, and application upon the part of certain property owners for the settlement of the order upon the decision of the Appellate Division, heretofore rendered.

The opinion written upon such decision appears in 23 Appellate Division, 472.

*Albert B. Boardman* and *Edward M. Shepard*, for the Board of Rapid Transit Railroad Commissioners.

*George Zabriskie* and *Cephas Brainerd, Jr.*, for the property owners.

VAN BRUNT, P. J.:

It is claimed, upon the part of the Board of Rapid Transit Railroad Commissioners, that the court had no power to require that certain conditions should be complied with prior to its giving its consent to the construction of the road by confirming the report of the Supreme Court commissioners.

As the court has the authority absolutely to refuse to confirm that report for any reasons which might seem to it to justify such action, it is difficult to see why it has not the power to require that certain things shall be done which, in its judgment, are a necessary prerequisite to its confirmation of such report. It was the exercise of precisely this power by the common council and the General Term in 1884, when consents were given for the construction of the Broadway surface railroad, below Fifteenth street, which resulted in the present receipt by the city of a sum annually exceeding in amount the interest (at the rate at which the city borrows money) upon three or four times the then claimed value of the franchise; and the imposition upon the company of the obligation in respect to repairing the streets and keeping the same free from snow and ice. Prior to the confirmation of the report of its commissioners in that case the General Term exacted the execution of an agreement upon the part of the corporation to conform to these requirements, and, after the execution of such agreement, the report of its commissioners was confirmed. There would seem, therefore, to be no doubt in regard to the power of the court, and the only question remaining to be considered is as to whether there should be any modification in reference to the amount of the bond required by the original decision.

It is apparent, upon an inspection of the application of the Board of Rapid Transit Railroad Commissioners, that the security proposed to be taken by them is clearly inadequate to protect the city from the loss of a large part of the money it might advance towards the construction of the road in the event of the failure of the contractor to complete and equip the same.

It is suggested by the board that the deposit by the contractor of $1,000,000 in cash or its equivalent, pursuant to the statute (which is to be returned to the contractor upon the construction and equipment of the road); the withholding of a reasonable percentage of the price of construction to be paid to the contractor *only* upon completion and equipment; a bond or several bonds to secure construction and equipment but not rental, the total amount of such bonds not to exceed $7,500,000; a lien upon the equipment to be furnished by the contractor pursuant to the statute, and, lastly, a bond under section 34 of the Rapid Transit Act (Laws of 1891, chap. 4, as amended by Laws of 1895, chap. 519) in an amount which,

with the cash value of the equipment shall be equal to the estimated rental for seven years, would be the proper security to be given by the contractor to the board.

It is apparent that the bond last mentioned, upon the basis suggested, would be a mere nominal bond. Assuming that the road could be constructed for $30,000,000, as estimated by the board, the aggregate rental would not much exceed $7,000,000, and as the cost of equipment would be from $7,500,000 to $12,000,000, there would be no excess of rental over the cost of equipment to make up the penalty of the bond.

In respect to the withholding of a reasonable percentage of the price of construction until completion and equipment, we are in no way informed as to what the commissioners think would be such reasonable percentage; and it will be apparent upon a moment's reflection that such a system of security is the most onerous to the contractor and of the least benefit to the city, that can well be devised, because it is requiring the contractor to put up security in cash, when, by the giving of a proper bond, he might attain the same object by credit. In respect to the city, the security would increase in proportion as the work progressed, and would be the greatest when it would be least needed, namely, when the construction and equipment were completed; whereas, the city needs the greatest protection from the failure of the contractor to carry out his contract of construction in its earlier stages.

The only other question that it is necessary to consider is as to whether the amount of the bond required by the Appellate Division is excessive. I think that it will be seen, when we consider the obligations of the contractor, that if he, after entering upon the work, abandons the contract, $15,000,000 would be insufficient to put the city in the same position which it would have occupied had he completed the contract. The cause of such abandonment will only be for the reason that the cost of construction is much greater than the contract price which the city is required to advance, and the only way in which the city can receive any benefit from the millions of money which it will have embarked in this enterprise, will be by the completing of the work itself — which will necessarily be at a cost to it largely exceeding the contract price, and this difference the sureties upon the bond should supply.

Furthermore, the only money which the contractor is to put into the enterprise at his own risk is that required for the equipment of the work after construction, upon which the city is to hold a lien to secure the provisions of the contract, which will then be those as to rent, maintenance and operation. It is estimated that this equipment will cost at least $8,000,000. In the event of the failure of the contractor, and of the city being compelled to complete the construction, this equipment will also have to be furnished by the city, and the amount expended therefor will be chargeable against the bond. It is thus at once seen that the indemnity exacted is not only not excessive, but would not in reality save the city from *loss* in case of the failure of the contractor to complete, if it occurred in the early stages of construction. The $7,000,000 of the bond remaining after providing for equipment, would undoubtedly be more than swallowed up by the increased cost of construction, if the city were compelled to complete.

It is undoubtedly true that the city will be largely protected as to rents, maintenance and operation by the lien which is given to it by statute upon the equipment to be furnished by the contractor. But it is imperatively necessary that it should have adequate protection by way of security in the matter of construction and equipment.

There is no difficulty in the giving of a bond with several conditions and limited obligations. We are of opinion that the conditions of the bond should provide that $14,000,000 of the bond should be conditioned upon construction and equipment, and that $1,000,000 should be a continuing security, applicable to construction, equipment, rents, maintenance and operation; and that such bond may be executed by two or several persons or corporations, each bound for at least $500,000 of the penalty, and justifying according to the statute.

We do not see how any adequate protection can be furnished to the city without the execution of security such as above required.

RUMSEY and PATTERSON, JJ., concurred; INGRAHAM, J., dissented.

INGRAHAM, J. (dissenting):

I dissent, upon the ground that the report should not be confirmed.

Application denied, conditions of stipulation settled as stated in opinion.